UNITED STATES v. TWENTY BOXES OF CORN LIQUOR.

(District Court, W. D. Virginia. April 30, 1902.)

1. REVENUE—LIQUORS—SHIPMENT—MARKING PACKAGE.
    Rev. St. § 3449 [U. S. Comp. St. 1901, p. 2277], provides that, when any one ships any liquors under any other than the proper name or brand known to the trade as designating the kind and quality of the contents of the package, the same shall be forfeited, and he be subject to a fine, etc. The section was originally a proviso to section 29 of the act of July 13, 1866, 14 Stat. 156, c. 184, "to reduce internal revenue and to amend an act to provide internal revenue." From section 21 (14 Stat. 153) the statute relates to distillers, brewers, manufacturers of wine, etc. Held, that the statute only applies to distillers, dealers in spirits, etc.

2. SAME—INFORMATION.
    An information under the statute which does not allege that the person who shipped the liquor was such a person as is forbidden by the statute to ship liquors under other than its true name is demurrable.

3. SAME—MARKING—CAUTION TO CARRIER.
    The marking of a package of liquor, "Glass; this side up with care" —cannot be considered as a designation of the contents of the package, the same being merely a caution addressed to the carrier.

4. SAME—FAILURE TO DESIGNATE.
    The statute does not forbid a shipment without any designation whatever.

Thos. L. Moore, U. S. Atty.
R. B. Glenn, for claimant.

McDOWELL, District Judge. Upon an information praying the forfeiture of 20 boxes, each containing 12 quart bottles of corn whisky.

When this case was called it was announced that counsel had agreed upon the facts, and that nothing was presented for decision except the proper construction of section 3449, Rev. St. U. S. [U. S. Comp. St. 1901, p. 2277]. It was further agreed that the informa-

tion should be so amended as to set out the facts, and that the question should be submitted by demurrer to the information. The agreed facts are as follows:

"Facts.

"Each box 12½ inches wide by 16½ inches long. Top of box 17½ inches long, covering handle on each end. Each box contained twelve quart bottles. There were no marks on the boxes, except on top was written: 'Glass; this side up with care.' To each box was attached a tag, on which was plainly written, 'O. Savannah, Ga.'"

The information has been rather sparingly amended, but may be treated as if sufficiently stating the facts.

The statute reads:

"Whenever any person ships, transports, or removes any spirituous or fermented liquors or wines, under any other than the proper name or brand known to the trade as designating the kind and quality of the contents of the casks or packages containing the same, or causes such act to be done, he shall forfeit said liquors or wines, and casks or packages, and be subject to pay a fine of five hundred dollars."

Section 3449, Rev. St. [U. S. Comp. St. 1901, p. 2277], was originally a proviso to section 29 of the act of July 13, 1866, "to reduce internal revenue and amend an act to provide internal revenue" (14 Stat. 98, 154). While the proviso may incidentally prevent private frauds and unfair trade (as to which there is some conflict of opinion, U. S. v. 132 Packages of Spirituous Liquor [D. C.] 65 Fed. 980; Id., 22 C. C. A. 228, 76 Fed. 364), it seems to me that its purpose is to prevent frauds on the revenue (U. S. v. Loeb [C. C.] 49 Fed. 636). And the first question is, to whom does the statute apply? From section 21 (14 Stat. 153) the statute is dealing with distillers, brewers, manufacturers of wine, rectifiers, and wholesale dealers in spirituous or fermented liquors or wines. Apparently such persons were alone in mind in enacting this proviso. Such persons and their employés frequently have to do with liquors and wines prior to the payment of the taxes thereon, while other persons cannot legally, and in fact very rarely do, have any connection with spirits or wines until after the tax has been paid. Even if the ordinary rules of construction did not confine the application of the statute to distillers, rectifiers, wholesale dealers, etc., the purposes of the statute and the nature of the proviso lead me to believe that it was not intended to apply to other persons. The statute certainly forbids shipping spirits or wine under false or misleading designations. Counsel for the government contend that it also forbids shipping without any designation. If the statute applies to all persons, a farmer or lawyer, moving his place of residence, who ships a bottle of whisky in a box containing bedding, and marks the box "household goods," is liable to a fine of $500. Whether done knowingly, or by accident in the confusion of moving, he is guilty. The fine is the same whether one bottle or a large quantity are thus moved. No discretion is vested in the court as to the amount of the fine.

If the statute not only applies to all persons, but also inhibits shipping spirits or wines without any designation, it has been unwittingly violated by many thousands of respectable citizens. If any one should

ship a bottle of port wine, for instance, to a convalescent friend, and put on the package merely the name and address of the consignee, he must be punished by this heavy fine! The very fact that this statute is not generally known to exist except to those producing or dealing in spirits and wines, and the fact that violations (if they be such) are of daily occurrence, convince me that this statute was not intended to apply to the public generally.

If, properly construed, the statute only applies to distillers, etc., I think the information here is open to demurrer, if for no other reason because it does not allege that the person who shipped the liquor in question was such a person as is forbidden by the statute to ship spirits under other than its true name. If the statute does not apply to all persons, but only to distillers, etc., the information does not necessarily show a right to the condemnation asked. It does not contain any allegation as to the occupation of the person who shipped the liquor. Every allegation in the indictment may be treated as true, and still no right of forfeiture be shown. A violation of a statute which forbids only certain persons from shipping liquor under the circumstances here alleged has not been charged, unless it be stated in the pleading that the shipper belonged to the class inhibited.

However, it will be advisable to consider the question here on the supposition that the information alleged that the person who shipped the spirits was at the time a distiller, for instance. It is not questioned that the statute forbids such persons to ship spirits or wine under a false or misleading designation. And the first question is, can the legend, "Glass; this side up with care," be considered as a designation of the contents of the packages? I think not. It is no more than a caution addressed to the carrier to apprise him of the necessity for more than ordinary care in handling the package. If such language were never used except when the article shipped is itself made of glass, there might be some room for the contention that this caution is a designation of the contents of the package. But a caution in these words, or in words of similar import, is as universally used when the article shipped is contained in glass as when it is itself made of glass. It is a matter of common knowledge that packages of liquids in bottles constitute a very large proportion of shipments bearing this identical caution.

The spirits here must then be considered, not as having been shipped under a false designation, but as having been shipped without any name or brand. Does the statute forbid such shipments? Such intent is certainly not expressed, and it does not seem to me to be fairly implied. The statute forbids shipping, transporting, or removing spirits and wine under an improper name or under a brand not known to the trade as designating the kind and quality. This language, while fully expressing an inhibition against shipping under a false or misleading designation, is not at all adapted to imply an intent to forbid shipping without any designation. Had it been the intent to forbid both practices, it is difficult to imagine why the act was not expressed so as to forbid shipping "without" the proper name or brand of the liquor appearing on the package, or "unless" the proper name was marked on the package. The amount of tax on

whisky and brandy has at times been different. The tax on fermented liquors is much less than that on whisky and brandy. It is therefore important to prevent removals or shipments of whisky, for instance, when marked as brandy or beer. While it might in some slight degree aid in preventing frauds to forbid shipping liquors without any designation, I should be very slow to read such intent into this statute. Shipping liquors under a false designation might lead to a serious loss of revenue; but certainly no maker or wholesale dealer could avoid taxes to any very great extent merely by shipping unmarked packages of liquor. It does not appear probable, therefore, that the practice of shipping unmarked packages is the evil which the statute was designed to prevent.

While an uncertain indication, it is not without some force that the marginal digests of this statute do not indicate an intent to forbid shipping unmarked packages. In 14 Statutes at Large, p. 156, the digest is, "Penalty  *  *  *  for removing spirituous, etc., liquors, etc., under wrong brand." In the Revised Statutes, the digest of section 3449 is, "Removing any liquors or wines under other than trade names; penalty."

An implied intent, even in a law enacted to prevent frauds upon the revenue, should not be found in a highly penal statute unless this intent is plainly implied. The context, the language used, and other considerations lead me to the belief that Congress had no intent to forbid unmarked shipments. But, even if to some other person such intent appears to be implied by this statute, it must be admitted that the implication is neither a necessary one nor one very clearly indicated on the face of the statute. When we read this statute as forbidding shipments of liquor under false names or misleading designations, we have given effect to its only expressed purpose. If we read it as forbidding shipments of unmarked packages, we are giving it an effect which, at the utmost, Congress may or may not have intended. And, unless we can say beyond reasonable doubt that Congress did have such intent, I think we are not authorized to thus construe the statute.

It is to be noted that this statute affixes a severe penalty; that no discretion is vested in the courts to vary the amount of the fine; and that the penalty is incurred whether the offense were committed knowingly or unintentionally. These considerations certainly tend to show that the statute was aimed at acts of commission, not at acts of omission; at acts per se deceitful, and not at acts which are in themselves not immoral; at acts which would very rarely occur except by design, and not at acts which might readily be the result of innocent mistake or mere neglect.

To my mind the entire meaning of the statute would be expressed if it were read: "When any person ships  *  *  *  liquors or wine under any name or brand other than the proper name or brand," etc., "he shall forfeit and be fined."

However, it seems to me that it is unnecessary to go further than to show grounds for a substantial doubt that Congress intended to forbid unmarked shipments. If such doubt exists, its benefit should be given the claimant rather than the government. And it must, at

the least, be admitted that there is room for grave doubt that Congress had this intent.

I am of opinion that the demurrer should be sustained. By agreement of counsel, the order may find that there was probable cause for the seizure.